PHV(3)

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 2 8 2008

CLERK, U.S. DISTRICT COURT
By _____
Deputy

FEDERAL APD INCORPORATED,

        Plaintiff,

v.

DALLAS/FORT WORTH
INTERNATIONAL AIRPORT BOARD,

        Defendant.

CASE NO. _____

**3-08 CV 1 2 8 3 -P**

## COMPLAINT

    Federal APD Incorporated ("Federal APD") brings this Complaint against the Dallas/Fort

Worth International Airport Board (the "Airport") and alleges as follows:

### NATURE OF THIS ACTION

1.

    Federal APD and the Airport entered into a $19 million contract whereby Federal APD

would design, manufacture, and deploy an automated parking system at the Dallas/Fort Worth

International Airport pursuant to written specifications prepared by the Airport. This action arises

from the Airport's material breach of this contract. Throughout the course of the automated parking

system project, Federal APD performed its contractual obligations, but the Airport, time and again,

refused to accept work that substantially complied with the contractual requirements, insisted that

Federal APD perform additional work not required by the contract as a condition precedent to the

next phase of the project, and demanded that Federal APD submit to unnecessary and duplicative

tests and reviews not contemplated by the contract, all without compensation and extensions of the

time for Federal APD to complete the automated parking system. The Airport also expanded the

scope of the work beyond the work required by the contract, requiring Federal APD to perform substantial additional work and incur great additional expense. As a result, the Airport has hindered and delayed Federal APD in the completion of the automated parking system, and the Airport has put Federal APD to unnecessary and unreasonable expense. Moreover, the Airport has refused to pay Federal APD amounts to which it is entitled under the contract and for the increased scope of work that the Airport demanded. The Airport has materially breached the contract, and Federal APD brings this action to recover the damages to which it is entitled under the contract, as well as an equitable adjustment of the contract price to fairly compensate Federal APD for the out-of-scope work the Airport required it to perform.

## THE PARTIES

2.

Federal APD is a corporation organized pursuant to the laws of Michigan and maintains its principal place of business in Michigan. For purposes of 28 U.S.C. § 1332, Federal APD is a citizen of Michigan.

3.

Federal APD is an international leader in the design, manufacture, and deployment of automated parking solutions for airports and other operators of large parking facilities. Federal APD has developed and deployed parking systems at 95 airports throughout the world.

4.

The Airport is a joint airport board organized pursuant to the laws of Texas and maintains its principal place of business in Texas. For purposes of 28 U.S.C. § 1332, the Airport is a citizen of Texas.

5.

The Airport operates the Dallas/Fort Worth International Airport, which is among the largest and busiest airports in the world.

## JURISDICTION AND VENUE

6.

Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction of the subject matter of this action because Federal APD and the Airport, for purposes of Section 1332, are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

7.

This Court has jurisdiction over the Airport because the Airport is a governmental body organized under the laws of Texas, maintains its principal place of business in Texas, regularly conducts business in Texas, and has an agent for service of process in Texas.

8.

Pursuant to 28 U.S.C. § 1391, venue lies in this district because the Airport is located in Dallas and Tarrant Counties, which are contained within this district, because a substantial part of the events and omissions giving rise to this action occurred in Dallas and Tarrant Counties, and because the Airport is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

*Contract between Federal APD and the Airport for an Automated Parking System*

9.

The Airport owns and operates a number of parking facilities for use by its patrons, employees, and other persons conducting business at Airport facilities. To procure a system to control access to these parking facilities and to control revenues collected from these parking

3

facilities, the Airport solicited bids in 2001 for the design, manufacture, and deployment of an automated parking system ("APS"). Federal APD submitted a bid, and the Airport ultimately awarded the project to Federal APD.

10.

In September 2002, Federal APD and the Airport entered into a contract for the design, manufacture, and deployment of the APS (the "Contract"). The terms of the Contract are memorialized in several written documents, including the Contract for Automated Parking System, the Automated Parking System Functional Specifications, and the Contract General and Special Provisions, true and correct copies of which are attached hereto as Exhibits A, B, and C. From time to time, Federal APD and the Airport entered into change orders, which amended the terms of the Contract, true and correct copies of which are attached hereto as Exhibits D, E, F, G, H, I, and J.

11.

The Contract sets forth the functionality and performance characteristics for the APS, although these requirements are stated with varying degrees of specificity. The most essential functionality and performance characteristics required by the Contract are:

(A)   That the APS control access to parking facilities with automated gates in entrance and exit lanes;

(B)   That the APS allow vehicles to enter parking facilities in several ways, including with a ticket provided to the vehicle operator at the time of entry or by use of an automated vehicle identification ("AVI") tag provided to the vehicle by the Airport or others;

(C)     That the APS allow vehicles to exit parking facilities after making payment in one of several ways, including with cash, by credit card, or by a charge to an AVI account, and allow certain vehicles to exit parking facilities without any payment;

(D)     That the APS use license plate recognition technology to identify vehicles entering and exiting parking facilities and to correlate entrance and exit traversals;

(E)     That the APS accurately collect extensive data about vehicle access to parking facilities and revenues collected from the parking facilities; and

(F)     That the APS accurately generate certain reports derived from the data collected by the APS.

12.

The Contract requires the development of the APS according to a particular sequence, and the Contract provides that the Airport is required to pay certain amounts to Federal APD upon Federal APD achieving certain milestones in the development of the APS. In particular, the Contract provides that Federal APD is entitled to certain payments upon achieving each of the following milestones:

(A)     Mobilization of project resources;

(B)     Successful completion of a conceptual design review;

(C)     Successful completion of a critical design review;

(D)     Successful completion of a software development review;

(E)     Successful completion of a factory demonstration test of the APS and its components;

(F)     Delivery to the Airport of certain consumables, including tickets, receipt paper, toner, and plastic cards for encoding;

(G)     Successful completion of a field test of individual APS components installed at the Airport parking facilities;

(H)     Successful completion of a systems test of the entire APS;

(I)     Successful completion of a 72-hour system test;

(J)     Successful completion of a 90-day system test, completion of certain training, and delivery to the Airport of certain documentation; and

(K)     Final acceptance by the Airport of the APS.

13.

The Contract, as amended by several change orders, purports to require the completion of the APS development project by April 14, 2005.

14.

The Contract permits the Airport to make certain changes to the functionality and performance characteristics required of the APS without additional cost to the Airport and without extending the time for completion of the APS development project, but only during the design phases of the APS development project.

15.

The Contract permits the Airport, for its own convenience, to suspend or delay the development of the APS. To the extent that the Airport suspends or delays the development of the APS, however, the Contract requires the Airport to extend the time for Federal APD to complete the development of the APS and requires the Airport to pay Federal APD additional compensation for the costs it incurs as a result of the suspension or delay.

16.

The Contract permits the Airport to request Federal APD to perform additional work not expressly required by the Contract, but within the general scope of the Contract. To the extent that the Airport requires Federal APD to perform such additional work, the Contract requires the Airport to extend the time for Federal APD to complete the development of the APS, if additional time is required as a result of the additional work requested. The Contract also requires the Airport to pay Federal APD additional compensation for such additional work.

*The Design Phases of the APS Project*

17.

Federal APD commenced the work required by the Contract in 2002.

18.

By June 2004, Federal APD successfully achieved, and the Airport accepted, the following milestones under the Contract:

(A)     Mobilization of project resources;

(B)     Successful completion of a conceptual design review;

(C)     Successful completion of a critical design review; and

(D)     Successful completion of a software development review.

19.

The Airport paid to Federal APD the amounts due for achieving each of the milestones described in paragraph 18.

20.

In June 2004, Federal APD and the Airport executed Change Order 3, which includes a mutual release of all claims under the Contract including claims for delay and changes in the scope of work, arising on or before June 6, 2004.

*The Factory Demonstration Test Phase of the APS Project*

21.

After June 2004, Federal APD successfully completed the factory demonstration test required by the Contract.

22.

Federal APD was entitled at that time to the payment specified by the Contract for achieving the factory demonstration test milestone and to move forward to the next phase of the APS project.

23.

The Airport unreasonably refused to accept the completion of the factory demonstration test at that time.

24.

Notwithstanding that Federal APD had substantially performed its obligations under the Contract with respect to the factory demonstration test, the Airport demanded, as conditions precedent for its acceptance of the factory demonstration test and its authority for Federal APD to move forward to the next phase of the project:

(A)     That Federal APD allow Airport personnel to participate in an unscripted, free-form, hands-on demonstration of the APS; and

(B)     That Federal APD complete another factory demonstration test in its entirety.

8

25.

The Contract did not require Federal APD to perform any of the work demanded by the Airport and described in paragraph 24.

26.

Federal APD accommodated the requests described in paragraph 24, although doing so required Federal APD to incur substantial additional expense and substantially delayed the completion of the APS project.

27.

The Airport never compensated Federal APD for the additional costs it incurred as a result of the additional work required, and the delay caused, by the Airport as described in paragraphs 24 and 26. Notwithstanding the delay caused by the Airport, the Airport also never agreed to extend the time for Federal APD to complete the APS project.

28.

Following the hands-on demonstration demanded by the Airport and the repeat of the factory demonstration test in its entirety, the Airport belatedly acknowledged in January 2005 that Federal APD had achieved the factory demonstration test milestone and subsequently paid to Federal APD the amount to which it was entitled under the Contract for achieving this milestone.

*The Field Test Phase of the APS Project*

29.

After January 2005, the Airport authorized Federal APD to proceed with the next phase of the APS development project, field testing, in a limited number of lanes at Airport parking facilities.

30.

Federal APD successfully completed the field test required by the Contract for the initial set of lanes, and Federal APD was entitled at that time to move forward with additional field tests in the remaining lanes.

31.

The Airport unreasonably refused to accept the completion of the field test for the initial set of lanes at that time.

32.

Notwithstanding that Federal APD had substantially performed its obligations under the Contract with respect to the field test for the initial set of lanes, the Airport demanded, as conditions precedent for its acceptance of the field test for the initial set of lanes and its authority for Federal APD to move forward with additional field tests in the remaining lanes:

(A)   That Federal APD repeat the field test for the initial set of lanes in its entirety on several occasions;

(B)   That Federal APD include certain items, such as reports reviews, in each field test;

(C)   That Federal APD perform additional work, such as the development and delivery of a comprehensive data dictionary; and

(D)   That Federal APD accept certain changes to the functionality and performance required of the APS, including with respect to reporting functionality, and modify the APS accordingly.

33.

The Contract did not require Federal APD to perform any of the work demanded by the Airport and described in paragraph 32.

10

34.

Federal APD accommodated many of the requests described in paragraph 32, although doing so required Federal APD to incur substantial additional expense and substantially delayed the completion of the APS project.

35.

The Airport never compensated Federal APD for the additional costs it incurred as a result of the additional work required, and the delay caused, by the Airport as described in paragraphs 32 and 34. Notwithstanding the delay caused by the Airport, the Airport also never agreed to extend the time for Federal APD to complete the APS project.

36.

Even after Federal APD performed the additional work required by the Airport, including by conducting three additional field tests for the initial set of lanes, the Airport refused to acknowledge that Federal APD had successfully completed the field test for the initial set of lanes. Consequently, the Airport wrongly refused to permit Federal APD to complete the field tests for the remaining lanes or to move forward to the next phase of the APS project.

37.

Federal APD would have achieved the field test milestone, and Federal APD would have been entitled to payment for that Contract milestone, if the Airport had not hindered and delayed Federal APD in the completion of the field test.

*Live Testing*

38.

After the fourth field test for the initial set of lanes, the Airport demanded in August 2006 that Federal APD, as a condition precedent for moving forward to the next phase of the APS project, conduct "live testing" in certain lanes at the Airport parking facilities.

39.

The Contract does not contemplate, much less require, such "live testing."

40.

Nevertheless, Federal APD accommodated the request described in paragraph 38, although doing so required Federal APD to incur substantial additional expense and substantially delayed the completion of the APS project.

41.

The Airport never compensated Federal APD for the additional costs it incurred as a result of the additional work required, and the delay caused, by the Airport as described in paragraphs 38 and 40.  Notwithstanding the delay, the Airport also never agreed to extend the time for Federal APD to complete the APS project.

42.

By August 2007, the Airport acknowledged that Federal APD successfully had completed the "live testing" requirement that the Airport had imposed.

43.

Notwithstanding this acknowledgement, and notwithstanding that the Airport had unilaterally imposed this "live testing" as a substitute for further field tests, the Airport wrongly refused to

acknowledge that the successful completion of "live testing" marked the achievement of the field test milestone.

44.

Federal APD is entitled to payment under the Contract for achieving the field test milestone, but the Airport has refused to make such payment.

*AVI Development*

45.

The Contract originally required Federal APD, as a part of the APS project, to develop and deploy AVI technology that was integrated and compatible with both the APS and the AVI computer network operated by the North Texas Tollway Authority ("NTTA"). By March 2005, Federal APD had completed much of the work required to develop such AVI technology.

46.

In March 2005, the Airport, for its own convenience, directed Federal APD to suspend work on the development of the AVI technology. In December 2005, Federal APD and the Airport executed Change Order 5, which removed certain and substantial AVI development work from the scope of the Contract.

47.

Even after the Airport suspended further AVI development work in March 2005, and even after the December 2005 change order, the Airport continued to insist that completion of AVI development remained a condition precedent to completion of the APS project. For instance, following the fourth field test for the initial set of lanes, the Airport demanded the completion and installation of AVI technology in certain lanes (which would require the completion of the AVI

13

development work) before "live testing" could commence, notwithstanding that the Airport had directed Federal APD to suspend its AVI development work.

48.

The Airport's inconsistent and changing demands regarding AVI development work further delayed the APS project and caused Federal APD to incur substantial additional expense.

49.

In July 2007, Federal APD and the Airport executed Change Order 7 requiring Federal APD to resume certain work relating to AVI development. The Airport, however, demanded that Federal APD perform additional work, beyond the scope of the Contract and this change order, as a condition precedent to completing the work required by the change order.

50.

For instance, the NTTA had substantially changed its network interface during the time that the Airport had suspended further AVI development work by Federal APD. As a result, some aspects of the AVI technology that Federal APD had developed prior to the March 2005 suspension no longer were compatible with the NTTA network. Although the Contract, including Change Order 7, did not require Federal APD to perform additional work to modify the AVI technology it previously had developed to conform with the changes to the NTTA network interface, the Airport demanded that Federal APD perform such additional work.

51.

Federal APD accommodated the requests described in paragraphs 49 and 50, although doing so required Federal APD to incur substantial additional expense and substantially delayed the completion of the APS project.

52.

The Airport never compensated Federal APD for the additional costs it incurred as a result of the additional work required, and the delay caused, by the Airport as described in the preceding paragraph. Notwithstanding the delay, the Airport also refused to extend the time for Federal APD to complete the APS project or the work required by Change Order 7.

53.

At least by April 2008, Federal APD had substantially performed its obligations under Change Order 7 and was entitled to certain payments under Change Order 7.

54.

The Airport refused to pay Federal APD the amounts to which it was entitled under Change Order 7.

*The Airport Required Federal APD to Perform Other Work Beyond the Scope of the Contract and Delayed the Completion of the APS Project*

55.

Besides the matters described in the preceding paragraphs, the Airport otherwise required Federal APD to perform substantial work beyond the work required by the Contract, and the Airport otherwise delayed the completion of the APS project.

56.

Federal APD accommodated the requests described in paragraph 55, although doing so required Federal APD to incur substantial additional expense and substantially delayed the completion of the APS project.

57.

The Airport never compensated Federal APD for the additional costs it incurred as a result of the additional work required, and the delay caused, by the Airport as described in paragraphs 55 and 56. Notwithstanding the delay, the Airport also never agreed to extend the time for Federal APD to complete the APS project.

*The Airport's Termination of the Contract*

58.

The Contract authorizes the Airport to terminate the Contract for default, if Federal APD has materially breached the Contract and fails to cure its breach within thirty days of notice to do so, or for the convenience of the Airport. If the Airport purports to terminate the Contract for default, but Federal APD was not, in fact, in default at the time of the termination, the Contract provides that the termination constitutes a termination for the convenience of the Airport. If the Airport terminates the Contract for its own convenience, Federal APD is entitled to payment of certain amounts under the Contract, including its costs incurred for work performed prior to the date of the termination, a reasonable profit on such work, and the costs incurred by Federal APD in the termination of subcontracts.

59.

On March 10, 2008, the Airport transmitted a notice of default and demand for cure to Federal APD, a true and correct copy of which is attached hereto as Exhibit K.

60.

Federal APD was not in default of the Contract on March 10, 2008 or at any time thereafter. To the extent that Federal APD was in default on March 10, 2008, it cured such default within thirty days of the notice of default and demand for cure.

61.

In April 2008, the Airport notified Federal APD that the Airport intended to terminate the Contract for default, and the Airport instructed Federal APD to incur no additional costs in connection with the Contract.

62.

The Airport has constructively terminated the Contract.

63.

Federal APD has substantially performed its obligations under the Contract.

64.

All conditions precedent to the filing of this action, including those described in Section 29 of the Contract for Automated Parking System, have been satisfied.

**COUNT ONE**
**BREACH OF CONTRACT**
**FOR FAILURE TO PAY AMOUNTS DUE UNDER THE CONTRACT**

65.

Federal APD incorporates by reference and restates the allegations contained in paragraphs 1 through 64.

66.

The Contract is a valid and enforceable agreement between Federal APD and the Airport.

67.

Federal APD substantially performed its obligations under the Contract prior to the termination of the Contract by the Airport.

68.

The Airport hindered and delayed Federal APD from completing the field test phase of the APS project.

69.

The Airport's conduct wrongly prevented Federal APD from being able to complete its performance of the Contract. But for the hindrance and delay caused by the Airport, Federal APD would have successfully completed the field test phase of the APS project and all of its remaining work under the Contract.

70.

Federal APD is entitled to payment under the Contract for achieving the field test milestone.

71.

Federal APD is entitled to payment under the Contract for the contractual value of all the work it has performed to date, less payments already made by the Airport under the Contract.

72.

Federal APD is entitled to payment under the Contract for the entire value of the Contract, less payments already made by the Airport under the Contract.

73.

Federal APD substantially performed its obligations under Change Order 7.

74.

Federal APD is entitled to payment under the Contract for completion of its obligations under Change Order 7.

75.

The Airport has refused to pay Federal APD the amounts to which it is entitled and described in paragraphs 70, 71, 72, and 74.

76.

By refusing to pay Federal APD amounts to which it is entitled under the Contract, the Airport has breached the Contract.

77.

As a proximate result of the breach of the Contract by the Airport, Federal APD has incurred damages in excess of $8,500,000.

**COUNT TWO**
**BREACH OF PROMPT PAY OBLIGATION**

78.

Federal APD incorporates by reference and restates the allegations contained in paragraphs 1 through 64.

79.

Federal APD is entitled to payment under the Contract of certain amounts for which Federal APD has transmitted invoices to the Airport.

80.

The Airport did not pay the amounts described in paragraph 79 within 46 days of the completion of the work entitling Federal APD to such payments and/or the invoice for such work.

81.

In addition to its other remedies, Federal APD is entitled to recover the amounts described in paragraph 79, as well as interest and attorneys' fees pursuant to Tex. Govt. Code § 2251.001 *et seq.*

## COUNT THREE
## BREACH OF CONTRACT
## FOR FAILURE TO EQUITABLY ADJUST CONTRACT AND PAY COMPENSATION
## FOR ADDITIONAL WORK REQUIRED BY THE AIRPORT AND FOR DELAY

### 82.

Federal APD incorporates by reference and restates the allegations contained in paragraphs 1 through 64.

### 83.

The Contract is a valid and enforceable agreement between Federal APD and the Airport.

### 84.

Federal APD substantially performed its obligations under the Contract prior to the termination of the Contract by the Airport.

### 85.

The Airport required Federal APD to perform additional work not required by the Contract in connection with the APS project, and Federal APD performed such work.

### 86.

Federal APD incurred substantial expense as a result of performing the work described in paragraph 85.

### 87.

Federal APD is entitled to fair and reasonable compensation for performing additional work requested by the Airport but not required by the Contract.

### 88.

The Airport hindered and delayed Federal APD in the completion of the APS project.

### 89.

Federal APD incurred substantial expense as a result of the delay described in paragraph 88.

90.

Federal APD is entitled to compensation for its costs incurred as a result of delay caused by the Airport.

91.

The Airport has refused to equitably adjust the Contract and to pay Federal APD the compensation to which it is entitled for performing work not required by the Contract and for delay caused by the Airport.

92.

By refusing to equitably adjust the Contract and to pay Federal APD amounts to which it is entitled under the Contract, the Airport has breached the Contract.

93.

As a proximate result of the breach of the Contract by the Airport, Federal APD has incurred damages in excess of $10,000,000.

94.

The damages described in paragraph 93 for the failure of the Airport to equitably adjust the Contract and pay compensation to Federal APD for additional work not required by the Contract and for delay are in addition to, and independent of, the damages described in Count One of this Complaint for the failure of the Airport to pay amounts due Federal APD under the Contract for work required by the Contract.

## COUNT FOUR
## BREACH OF CONTRACT
## FOR FAILURE TO PAY AMOUNTS DUE
## UPON TERMINATION FOR CONVENIENCE

95.

Federal APD incorporates by reference and restates the allegations contained in paragraphs 1 through 64.

96.

The Contract is a valid and enforceable agreement between Federal APD and the Airport.

97.

Federal APD substantially performed its obligations under the Contract prior to the termination of the Contract by the Airport.

98.

The Airport has terminated the Contract for its own convenience.

99.

Federal APD is entitled under the Contract to certain payments in the event of a termination for convenience, including:

(A)     Its costs incurred for work performed prior to the date of termination;

(B)     A reasonable profit on such work;

(C)     Its costs incurred as a result of terminating subcontracts; and

(D)     Certain other costs incurred by Federal APD in connection with the termination.

100.

The Airport has refused to pay Federal APD the amounts to which it is entitled as a result of the termination for convenience.

101.

By refusing to pay Federal APD amounts to which it is entitled under the Contract, the Airport has breached the Contract.

102.

As a proximate result of the breach of the Contract by the Airport, Federal APD has incurred damages in excess of $21,000,000.

## PRAYER FOR RELIEF

WHEREFORE, Federal APD respectfully prays for a judgment, against the Airport and in favor of Federal APD, on each count of this Complaint for:

(A)     All of its damages, in an amount to be proven at trial;

(B)     Pre- and post-judgment interest as allowed by law;

(C)     Its reasonable attorneys' fees;

(D)     Its costs; and

(E)     Such other and further relief as is appropriate.

Respectfully submitted,

Robert Hoffman
Texas Bar No. 09788200
**GARDERE WYNNE SEWELL LLP**
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Telephone:  (214) 999-4707
Facsimile:  (214) 999-3707

Ronald T. Coleman, Jr.
Georgia Bar No. 177655
Keith R. Blackwell
Georgia Bar No. 024493
Melissa M. Burton
Georgia Bar No. 404685
*(applications for admission pro hac vice pending)*
**PARKER HUDSON RAINER & DOBBS LLP**
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303
Telephone:  404-523-5300
Facsimile:  404-522-8409

*Counsel for Federal APD Incorporated*

24